IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SUSAN CIS,

                        Plaintiff,                            OPINION AND ORDER

   v.
                                                                         15-cv-188-wmc
CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                        Defendant.

Plaintiff Susan Cis seeks judicial review under 42 U.S.C. § 405(g) of a final decision of defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying her application for Supplemental Security Income (SSI) and Social Security Disability Insurance (SSDI) benefits. On December 19, 2016, the court heard oral argument regarding plaintiff's specific contentions that the administrative law judge ("ALJ") erred in failing: (1) to adopt significant limitations in plaintiff's residual functional capacity ("RFC") as assessed by a consulting examiner; and (2) to give adequate consideration to the effect of plaintiff's obesity on her back impairment as required by Social Security Ruling 02-1P.

For the reasons explained in this opinion, the court agrees that the ALJ should have acknowledged that the consultative examiner specialized in orthopedic medicine, had been appointed by the Social Security Administration (SSA), was familiar with its requirements, and performed a physical examination of Cis. Still, as also explained below, the court finds that the ALJ provided valid reasons for rejecting the consultative examiner's opinion, and he adopted an RFC assessment supported by substantial evidence. Similarly, while the ALJ did not conduct a detailed analysis of the effects of Cis's obesity, he sufficiently complied with his statutory and regulatory obligations, particularly in light of the fact that

there was no evidence in the record regarding the effects of Cis's obesity. Accordingly, the court will affirm the ALJ's finding that Cis was not entitled to SSDI and SSI benefits.

BACKGROUND

Plaintiff Susan Cis claims a disability onset date of June 16, 2011, because of possible fibromyalgia, chronic obstructive pulmonary disease, and problems with her cervical spine. (AR 56-59.) Cis testified that she has difficulty standing, sitting, and walking for more than 10-15 minutes at a time because of back pain and stiffness. (AR 55-56, 58.) She also testified to problems with balance, as well as stiffness and weakness in her hands, knees, and hips. (AR 57.) Cis was 52 years old when she applied for benefits, had an 11th grade education, and had past work experience as a cook at a daycare facility (light work), a factory helper (performed as heavy work), a janitor (medium work), and a cashier (light work) at gas stations. (AR 18, 44, 48-53, 66-68.)

In her brief and at the oral argument, Cis conceded that the record contains limited medical information from her treating providers in 2011, apart from references to a "history" of fibromyalgia and lumbar degenerative disc disease. (AR 264-98 and 331-341.) However, two consulting physicians submitted opinions concerning Cis's physical condition in October 2012.

On October 17, 2012, state agency physician, Dr. Jui Haker, performed an orthopedic and musculoskeletal examination with respect to Cis's hand, back, and knee pain. Cis reported her pain became progressively worse starting in 2001, and it became worse still following a car accident in 2011. Cis also reported being severely limited in her abilities, including: (1) being able to walk only half a block; (2) standing and sitting for

2

15 minutes at a time; (3) lifting a gallon of milk with both hands; and (4) climbing ladders and stairs with difficulty.  Without explanation, Dr. Haker appears to have simply adopted the same limitations that Cis reported to him.  (AR 361-65.)

Dr. Haker's own physical examination of Cis revealed:  tenderness to palpation in the paraspinal muscles of Cis's neck and lumbar spine, and in the sacroiliac joints of her lumbar spine; limited range of motion in her neck and knee joints; a negative straight leg raising test; normal strength in all of her muscles; normal gait; ability to get on and off the exam table without assistance; ability to squat midway to the floor; mild instability; and normal range of motion in her upper extremities, hip joints, and ankles.  He noted that Cis performed movements in her neck and upper extremities slowly due to pain.  X-rays showed mild degenerative changes in Cis's lumbar spine and right hand, and advanced degenerative changes in her right hand.  In light of these limitations, Dr. Haker opined that Cis had a poor to fair prognosis and would require chronic pain management.  *Id.*

On October 24, 2012, state agency physician Dr. Mina Khorshidi conducted an independent review of Cis's medical records.  He concluded that she was capable of light work, which included lifting 20 pounds and standing/walking six hours a day.  (AR 102-04.)  Dr. Khorshidi specifically considered Dr. Haker's opinion and his examination findings, but noted that Haker's limitations were based on Cis's self-reports and were inconsistent with his own physical examination of Cis.  (AR 102.)

Following Haker's consultative exam, Cis intermittently reported neck pain to her primary care physicians at Mercy Clinic in 2012 and 2013.  (AR 382, 404-05, 476, 481.) On December 11, 2012, x-rays of Cis's cervical spine showed multilevel degenerative cervical disk disease with neural foraminal narrowing.  (AR 437.)

3

On August 8, 2013, Dr. Ronald Garcia diagnosed cervical spondylosis and chronic neck pain. He recommended physical therapy and over the counter pain medications. (AR 481.) On October 3, 2013, Cis saw Dr. Garcia again for low back, hip, leg, knee and ankle pain and to get disability paperwork signed. (AR 462.) At that time, Garcia ruled out fibromyalgia because Cis had only two out of 18 tender points, and he did not sign the disability paperwork because he did not have sufficient information to give an opinion. Instead, Dr. Garcia's exam showed that Cis had some limited range of motion in her spine, knees, and hips but normal muscle tone and strength. She also had minimal tenderness in her lower lumbar spine and hips. (AR 465-67.)

## II. ALJ's Decision

On November 18, 2013, the ALJ held an administrative hearing at which Cis appeared with counsel. (AR 38.) The ALJ issued a written decision on January 9, 2014, finding Cis not disabled. While the ALJ found that Cis was severely impaired by obesity, fibromyalgia, chronic obstructive pulmonary disease, and degenerative disk disease of the cervical spine, he nevertheless concluded that Cis had the RFC to perform light work limited to: (1) no climbing of ropes, ladders, and scaffolding; (2) occasional climbing of ramps and stairs; (3) occasional balancing; and (4) avoiding more than occasional exposure to extreme temperature and humidity, hazards, fumes, dust odors, gases, and poorly ventilated environments. (AR 14-15.)

In reaching his decision, the ALJ considered the state consultant medical opinions and found Dr. Khorshidi's opinion most persuasive. (AR 17.) He gave limited weight to Dr. Haker's opinion because it merely restated Cis's own report of her abilities, and it was

4

inconsistent with Dr. Haker's examination, as well as the medical records as a whole, including Dr. Garcia's multiple physical exams conducted roughly one year later. *Id.* Adopting the limitations of Drs. Korshidi and Garcia in the determination of Cis's RFC and relying on the testimony of a vocational expert, the ALJ found that Cis was capable of performing her past light work as a cook and cashier, as well as work as a hostess, inspector, and office helper. (AR 18-19.)

OPINION

**I. Dr. Haker**

The record contained very few medical records discussing Cis's back impairment and there were no opinions from her treating physicians. As discussed above, Dr. Haker, the state agency consulting physician who actually examined Cis, concluded that she was unable to lift more than a gallon of milk or sit, stand or walk for any appreciable length of time. The ALJ declined to include these limitations in his RFC, which would have precluded her from working, because they merely appeared to restate Cis's own reports of her limitations. In addition, both Drs. Korshadi *and* Garcia were struck by the inconsistencies in Cis's report of her limitations and Dr. Haker's actual examination findings and Cis's sparse medical record.

Although generally more weight is given to the opinion of a medical source who examines a claimant than to the opinion of a non-examining source, 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1), unlike a treating physician, the opinion of a consultative examiner hired by SSA is not entitled to controlling weight. *See Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009) (ALJ not required to assign controlling weight to nontreating source);

20 C.F.R. §§ 404.1502, 416.902 (A nontreating source is "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you."). Instead, the ALJ must weigh the opinion of a consulting doctor in light of the regulatory factors, including: whether the physician supports his opinion with medical signs and laboratory findings; how consistent the physician's opinion is with the evidence as a whole; and whether the physician is a specialist in the allegedly disabling condition. *See Simila*, 573 F.3d at 514 (citations omitted); 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6) (listing factors to consider in weighing medical opinions). The ALJ also must provide reasons for the weight he gives any medical opinion supported by substantial evidence in the record. Soc. Sec. Rul. 96–6p; 20 C.F.R. §§ 404.1527(e), 416.927(e); *Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011).

Cis argues that the ALJ failed to recognize that Dr. Haker had been hired by the SSA to conduct an examination of plaintiff and specialized in orthopedic medicine. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation"). In addition, while conceding that there is little support for Dr. Haker's extreme limitations in the contemporary medical record of 2011 and 2012, Cis points out that the records from late 2012 and 2013 are more consistent with Dr. Haker's opinion.

While it would have been better if the ALJ had acknowledged in his written opinion that Dr. Haker was an orthopedic specialist and had been appointed by SSA to conduct a physical examination, there is still adequate support in the record for the ALJ's conclusion that Dr. Haker's limitations for Cis were too extreme and not supported by substantial

6

evidence in the record. To the contrary, Dr. Haker discerned only mild physical findings during his examination of Cis, including some range of motion and gait limitations, and nothing in the subsequent medical record showed that the ALJ was required to defer to Dr. Haker's opinion. The examinations and progress notes from Cis's treating physicians say almost nothing about her neck, back or leg pain, and still *no* treating provider offered an opinion on her ability to work.

Finally, the ALJ relied on the subsequent opinions of Dr. Khorshidi, who reviewed Dr. Haker's opinion and findings and concluded that there was little support for Cis's self-reported limitations, as well as the later physical exams conducted by Dr. Garcia. Accordingly, the court concludes that there is sufficient evidence in the record from which the ALJ could reasonably conclude that there was little support for Dr. Haker's opinion.

## II. Obesity

When a claimant suffers from obesity, SSR 02–1p requires the ALJ to incorporate the effects of obesity in the five-step sequential evaluation process. This is in recognition that "the combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1P, 2002 WL 34686281, at *3 (S.S.A. Sept. 12, 2002); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). However, a failure to consider the effects of obesity explicitly may be harmless error, so long as the ALJ demonstrated that he reviewed the medical reports of doctors familiar with the claimant's obesity. *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006); *Skarbek*, 390 F.3d at 504; *Hernandez v. Astrue*, 277 Fed. Appx. 617, 624 (7th Cir. 2008) (unpublished); *Wierzba v. Colvin*, No. 12-CV-60-wmc, 2014 WL 4437790, at *5–6 (W.D. Wis. Sept. 9, 2014).

Although it is troubling that the ALJ did not explicitly mention the effects of obesity at each stage of the five-step evaluation, he explicitly found obesity to be one of Cis's severe impairments and noted that he had considered her obesity consistent with SSR 02-1P. (AR 14.) In addition, the ALJ relied on the opinion of Dr. Khorshidi, who specifically noted that "COPD and obesity play large role in [Cis's] abilities but there is no significant MDI [medically determinable impairment] to explain her inability to walk and stand." (AR 103.)

No other treating or examining physician stated an opinion that additional limitations were required by Cis's obesity, nor does Cis cite any evidence that she believes the ALJ failed to consider. SSR 02-1P at *6 ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments."). Therefore, although the ALJ's discussion was cursory, he did not commit reversible error by failing to consider expressly any additional limitations that Cis's obesity might require.

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Susan Cis's application for disability benefits and supplemental security income is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 24th day of May, 2017.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge